**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEAN VERNET, Case No.: 8:26-cv-3172

Plaintiff,

v.

TOWN OF LAKE HAMILTON, a Florida municipal corporation, CHRISTOPHER VOTOUR, individually, and JOSE ORTIZ-GONZALEZ, individually,

Defendants.
_______________________________________/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, JEAN VERNET ("Plaintiff" or "Officer Vernet"), by and through undersigned counsel, sues Defendants, TOWN OF LAKE HAMILTON ("Defendant" or "the Town"), CHRISTOPHER VOTOUR, individually ("Votour"), and JOSE ORTIZ-GONZALEZ, individually ("Ortiz-Gonzalez") (Votour and Ortiz-Gonzalez together, the "Individual Defendants"), and alleges:

## I. NATURE OF THE ACTION

1. This is an action for damages and other relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); 42 U.S.C. § 1981, as enforced against a state actor through 42 U.S.C. § 1983; 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution; the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq. ("FCRA"); and Fla. Stat. § 440.205. Plaintiff also sues Votour and Ortiz-Gonzalez in their individual capacities under 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983.

2. Officer Vernet, a Black police officer of Haitian ancestry, was subjected by his supervisors in the Town's police department to frequent racial slurs, ridicule of his Haitian ancestry, and unwelcome sexual conduct that included invitations for group sex with his coworkers and supervisors. He refused the sexual advances and opposed the discriminatory conduct, reporting it to the Chief of Police.

3. After an on-duty injury placed him on workers' compensation leave, the Town fired him for pretextual reasons while he was still on that leave and had not been released from medical care.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) and 42 U.S.C. § 2000e-5(f)(3), because this action arises under the Constitution and laws of the United States.

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative fact as the federal claims and form part of the same case or controversy.

6. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because Defendant is located in, and the unlawful employment practices alleged here were committed in, Polk County, Florida. Venue is proper as to the Individual Defendants under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims against them occurred in this District.

## III. PARTIES

7. At all material times, Plaintiff was an adult male residing in Polk County, Florida. Plaintiff is Black and is of Haitian ancestry, ethnicity, and national origin.

8. Defendant is a municipal corporation organized under the laws of the State of Florida and located in Polk County, Florida. Defendant operates the Lake Hamilton Police Department ("LHPD") as a department of the Town; LHPD is not a separate legal entity capable of being sued.

9. At all material times, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and Fla. Stat. § 760.02(7) because, upon information and belief, it employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

10. At all material times, Defendant was an "employer" within the meaning of Fla. Stat. § 440.02(19)(a), which includes all political subdivisions of the State

and all public corporations therein, and Plaintiff was its "employee" within the meaning of Fla. Stat. § 440.02(18)(a).

11. At all material times, Defendant acted under color of state law.

12. At all material times after in or about November 2024, Defendant Christopher Votour was LHPD's Chief of Police. Votour is sued in his individual capacity. At all material times, Votour acted under color of state law.

13. At all material times, Defendant Jose Ortiz-Gonzalez was a supervisory officer of LHPD who held supervisory authority over Plaintiff — as a sergeant and acting lieutenant, then as a lieutenant, and by June 2025 as LHPD's captain. Ortiz-Gonzalez is sued in his individual capacity. At all material times, Ortiz-Gonzalez acted under color of state law.

## IV. GENERAL ALLEGATIONS

14. On or about December 22, 2023, Defendant hired Plaintiff.

15. At all material times, Plaintiff was qualified for his position as a police officer.

16. At all material times, Jose Ortiz-Gonzalez ("Ortiz-Gonzalez")—who was then a sergeant and acting lieutenant, later LHPD's captain—and Sergeant Travis David Clark ("Clark") held supervisory authority over Plaintiff.

17. Ortiz-Gonzalez and Clark each served as one of Plaintiff's field-training officers.

18. After Plaintiff completed field training, Sergeant Clark was the acting supervisor responsible for LHPD's patrol squads, including Plaintiff's, with authority to direct Plaintiff's daily work, make his assignments, and initiate and issue discipline, which he did.

19. On or about November 12, 2024, Sergeant John Manuel Castro joined LHPD.

20. In or about November 2024, Christopher Votour became Chief of Police of LHPD and was Chief of Police at all material times thereafter.

21. Plaintiff's supervisors, including Ortiz-Gonzalez, repeatedly made racial "jokes" in the LHPD workplace, including in Plaintiff's presence, in which they interchanged the word "**NICKELS**" with the racial slur **"NIGGERS,"**

22. By way of further example, they would ask **"WHY ARE BLACK GUYS SO TALL?"** and answer **"[BECAUSE THEIR] KNEE GROWS"** — a play on the slur "**NEGROES**."

23. Ortiz-Gonzalez and Clark called Plaintiff the **"HAITIAN HAMMER,"** a nickname that combined ridicule of Plaintiff's Haitian ancestry with a sexual reference to his penis.

24. Plaintiff made his disapproval of these crude racial and ethnic statements plain and did not laugh, because he found these to be offensive and racist jokes.

25. Despite Plaintiff's disapproval, the racial, ethnic and sexual comments continued regularly until Plaintiff's injury leave began on December 2, 2024.

26. Another LHPD officer, Emanuello Jules, was present during some of these incidents and heard Ortiz-Gonzalez and Sergeant Castro use the racial slur multiple times.

27. The discriminatory slurs and the ridicule of Plaintiff's ancestry were unwelcome. Plaintiff did not invite or welcome them and objected to them.

28. The conduct was committed openly by LHPD command staff — its lieutenant and sergeants — and Defendant took no action to stop it.

29. In or about October 2024, Plaintiff found a USB drive on Town property and reported finding it to Ortiz-Gonzalez.

30. In response, Ortiz-Gonzalez asked Plaintiff whether he had viewed its contents, and added that revealing the contents of the USB drive would "**RUIN CAREERS**."

31. Ortiz-Gonzalez warned Plaintiff that he would be a "**DEAD MAN WALKING**" if the contents became public.

32. Beginning in or about October 2024, Ortiz-Gonzalez, Sergeant Clark, and other supervisors repeatedly pressured Plaintiff to participate in "threesomes" and sex parties with male officers.

33. Plaintiff was offended and refused every time.

34. Despite Plaintiff's refusals, Ortiz-Gonzalez continued to pressure Plaintiff to participate in those sexual activities, offering him promotions, better work details, and a new take-home vehicle if he did. Still, Plaintiff refused.

35. On multiple occasions between October and December 2024, Sergeant Clark rubbed and scratched the inner palm of Plaintiff's hand in a sexual manner.

36. Plaintiff understood Sergeant Clark's touch as a request that Plaintiff engage in sexual encounters with him or others.

37. Plaintiff objected and made clear to Sergeant Clark that he is heterosexual and not interested in any sexual encounters with men or coworkers.

38. Despite Plaintiff's objections and opposition to these advances, Ortiz-Gonzalez and Sergeant Clark attempted to grab Plaintiff's genitals while calling him the **"HAITIAN HAMMER."**

39. The sexual conduct described above was unwelcome. Plaintiff objected to it, refused it, and found it offensive and humiliating.

40. The sexual propositions, the offers of workplace benefits in exchange for sexual participation, and the physical touching were directed at Plaintiff because of his sex.

41. After Christopher Votour became Chief, Plaintiff reported the racial and sexual harassment described above to him. Votour asked Plaintiff to prepare a

written complaint for a meeting. Plaintiff prepared the written complaint, and a meeting was scheduled twice. Votour cancelled the meeting on both occasions.

42. Upon information and belief, Sergeant Clark, one of the harassers, is a personal friend of Votour.

43. Defendant took no corrective action in response to Plaintiff's report. Defendant did not refer any of the conduct for investigation until August 27, 2025 — after Plaintiff had been fired and had filed a charge of discrimination with the EEOC.

44. After Plaintiff refused his supervisors' sexual advances and objected to their racial, ethnic and sexual harassment, their treatment towards him changed for the worse. By way of example, his supervisors micromanaged his work, scrutinized his conduct more closely than that of other officers, and isolated and ostracized him within the department.

45. By way of further example, his supervisors repeatedly sent him alone to traffic stops and accident calls while other officers remained at the station, exposing him to greater risk and workload than his peers. His supervisors also excluded him from promotions, better work details, and favorable assignments, which went instead to officers within their inner circle.

46. On or about October 31, 2024, Sergeant Clark — one of the harassers — in retaliation for his opposition, issued Plaintiff a letter of counseling under

LHPD's dress-code and social-media general orders, based on Plaintiff's off-duty social-media content.

47. On or about November 1, 2024, then-Lieutenant Ortiz-Gonzalez — another of the harassers — in retaliation for his opposition, issued Plaintiff a separate, retaliatory letter of guidance concerning an unrelated vehicle accident on or about October 2, 2024, a minor matter that did not warrant discipline.

48. The October 31, 2024 counseling singled Plaintiff out. Other LHPD officers, including supervisors, appeared on social media in LHPD uniform or department attire but were not counseled or disciplined.

49. On or about November 5, 2024, Plaintiff told Clark to stop harassing him and to stop creating a hostile work environment, and told Clark that he had reported Clark's harassment.

50. On December 2, 2024, while on duty and fueling his patrol vehicle, Plaintiff was injured when the gas pump exploded and sprayed gasoline onto his face and uniform, causing Plaintiff to slip and fall, suffering other physical injuries. Plaintiff reported injuries to his eyes, his head, knees, and feet.

51. Plaintiff's injury arose out of and in the course of his employment with Defendant. Defendant placed Plaintiff on workers' compensation leave, and Plaintiff made a valid claim for workers' compensation benefits, including by filing a petition for benefits on or about January 14, 2025.

52. From December 2024 until his termination, Plaintiff remained on workers' compensation leave continuously.

53. Defendant has acknowledged that Plaintiff had not been released from medical care before it terminated him.

54. On or about June 17, 2025, Plaintiff learned that his father, who was terminally ill with cancer, had been admitted to Orlando Regional Medical Center. Still injured and wearing a medical boot, Plaintiff traveled to Orlando to be with his father.

55. In the early morning hours of June 18, 2025, Sergeant Clark and Officer Ryan Elber drove from Lake Hamilton to the hospital, confronted Plaintiff at approximately 2:30 a.m. while he was visiting his father, and took his badge and police identification.

56. Sergeant Clark and Officer Ryan Elber drove approximately 50 miles and outside of their jurisdiction from Lake Hamilton to the hospital at the direction of Ortiz-Gonzalez, one of the harassers.

57. Plaintiff's possession of his badge and police identification violated no law, and Defendant itself certified that Plaintiff's separation did not involve a moral character violation.

58. Later that same day, June 18, 2025, Votour terminated Plaintiff's employment. The termination letter stated only that Plaintiff's employment "has been

terminated with cause for violating G.O. 11.01M, section C 1, 2, and 4 under Code of Conduct."

59. Before June 18, 2025, Defendant had not notified Plaintiff of any charge under G.O. 11.01M, did not tell him how he had allegedly violated it, and gave him no opportunity to respond.

60. Plaintiff was on workers' compensation leave, and had not been released from medical care, when Defendant fired him.

61. In the Affidavit of Separation that Votour executed under oath on June 18, 2025, and that Defendant filed with the Florida Department of Law Enforcement, Defendant certified that Plaintiff was terminated for violation of agency policy "not involving a moral character violation" as defined in Rule 11B-27.0011, Florida Administrative Code.

62. Plaintiff's father died a few days after the termination.

63. The reason Defendant gave for the termination is a pretext. Among other things: (i) the stated reason is a generic citation to a general order, without facts; (ii) Defendant never investigated or gave Plaintiff an opportunity to respond; (iii) Defendant terminated Plaintiff while he was on workers' compensation leave; (iv) the seizure of Plaintiff’s credentials that immediately preceded the termination was carried out by Sergeant Clark, one of the supervisors whose harassment Plaintiff had refused and reported, and the termination was made by Votour, who had ignored

Plaintiff's complaints; and (v) upon information and belief, the supervisors who harassed Plaintiff, none of whom is Black or of Haitian origin, were not disciplined for their conduct.

64. Votour knew of Plaintiff's workers' compensation claim and leave, and had personally called Plaintiff while Plaintiff was on leave.

65. Upon information and belief, after Votour took office, Defendant promoted Jose Ortiz-Gonzalez to captain, placing him in command over Plaintiff, despite knowing from Ortiz-Gonzalez's pre-employment disclosures that he had a documented history of misconduct and sustained policy violations at other law-enforcement agencies, and that he had separated from two prior agencies under those circumstances.

66. Under Section 3.03 of Defendant's Town Charter and Section 4.01(A) of Defendant's Personnel Policy Handbook (the "Handbook"), Defendant's Town Administrator holds the authority to appoint, suspend, demote, and dismiss Town employees under the Administrator's jurisdiction, including LHPD officers.

67. Defendant's Town Administrator, together with Votour, made the decision to terminate Plaintiff.

68. Votour personally participated in the decision to terminate Plaintiff and signed the termination letter.

69. Votour had actual knowledge of the racial and sexual harassment of Plaintiff.

70. Upon information and belief, when the Town Administrator made or approved the decision to terminate Plaintiff, the Town Administrator knew, through Votour, that Plaintiff was on workers' compensation leave and that Plaintiff had reported racial and sexual harassment by LHPD supervisors.

71. In the alternative, the Town Administrator delegated to Votour final authority to dismiss LHPD officers, as Section 4.01(A) of the Handbook permits.

72. Upon information and belief, Defendant disciplined no LHPD supervisor for the racial or sexual conduct described above, and Defendant promoted Ortiz-Gonzalez, one of the harassers, to captain.

73. Upon information and belief, at all material times, Defendant had no functioning procedure through which LHPD officers could report harassment outside the LHPD chain of command, and LHPD officers were not informed of any such procedure.

74. The open and repeated use of racial slurs and sexualized conduct by LHPD command staff, without discipline, was so persistent and widespread that it constituted a custom of Defendant, of which Defendant's policymakers had actual or constructive knowledge.

75. Defendant's official decision, its delegation, and its custom, separately and together, were the moving force behind the violations of Plaintiff's federal rights.

76. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, inconvenience, and damage to his professional reputation.

77. On or about August 15, 2025, Plaintiff dual-filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2025-04738 and the Florida Commission on Human Relations ("FCHR") alleging discrimination because of race, color, national origin, and sex, hostile work environment, and retaliation. Plaintiff filed the charge within 300 days of the discriminatory and retaliatory acts alleged in it.

78. More than 180 days passed after the filing of the charge without a determination by the FCHR.

79. On July 24, 2026, the United States Department of Justice, Civil Rights Division, issued Plaintiff a Notice of Right to Sue on the charge (Ref. 809075-HFJ).

80. Plaintiff filed this action within 90 days of receiving the Notice of Right to Sue, and within the time permitted by Fla. Stat. § 760.11.

81. All conditions precedent to this action have occurred, been performed, or been waived.

**COUNT I**
**HOSTILE WORK ENVIRONMENT — RACE, COLOR, AND NATIONAL ORIGIN**
**(Title VII, 42 U.S.C. § 2000e-2(a)(1))**
**(Against Defendant Town of Lake Hamilton)**

82. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

83. Plaintiff is Black and of Haitian national origin, and is a member of protected classes under Title VII.

84. Plaintiff was subjected to unwelcome harassment — including racial slurs and ridicule of his Haitian ancestry — by his supervisors because of his race, color, and national origin.

85. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment, which Plaintiff subjectively perceived, and a reasonable person would perceive, as hostile and abusive.

86. Defendant is liable for the harassment because it was committed by Plaintiff's supervisors, and because Defendant knew or should have known of it — including through Plaintiff's report to Votour and through its open commission by command staff — and failed to take prompt and appropriate remedial action.

87. At least one act contributing to the hostile work environment occurred within 300 days before Plaintiff filed his charge of discrimination.

88. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Title VII;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT II**
**DISCRIMINATION**
**(Title VII, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-2(m))**
**(Against Defendant Town of Lake Hamilton)**

89. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

90. Plaintiff is Black and of Haitian national origin, and was qualified for his position.

91. Defendant terminated Plaintiff's employment on June 18, 2025.

92. Plaintiff's race, color, and national origin were motivating factors in, and but-for causes of, Defendant's decision to terminate him. Defendant treated similarly situated employees outside Plaintiff's protected classes more favorably, and its stated reason is a pretext for discrimination.

93. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Title VII;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT III**
**HOSTILE WORK ENVIRONMENT — SEX**
**(INCLUDING QUID PRO QUO)**
**(Title VII, 42 U.S.C. § 2000e-2(a)(1))**
**(Against Defendant Town of Lake Hamilton)**

94. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

95. Title VII prohibits sexual harassment of a male employee by male supervisors when the harassment occurs because of sex.

96. Plaintiff was subjected to unwelcome sexual propositions, pressure to participate in sexual activity with male officers, offers of workplace benefits in exchange for sexual participation, sexualized touching of his hand, and attempts to grab his genitals while calling him the **"HAITIAN HAMMER."**

97. The harassment occurred because of Plaintiff's sex. Among other things, it consisted of explicit sexual propositions and sexual touching that reflected sexual interest in Plaintiff.

98. The harassment was sufficiently severe or pervasive — including repeated physical sexual contact and attempted contact by supervisors — to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment, which Plaintiff subjectively perceived, and a reasonable person would perceive, as hostile and abusive.

99. Defendant is liable because the harassment was committed by Plaintiff's supervisors and because Defendant knew or should have known of it and failed to take prompt and appropriate remedial action.

100. In the alternative, Plaintiff's supervisors conditioned promotions, better work details, and other job benefits on Plaintiff's submission to their sexual demands, and Plaintiff's refusal was followed by adverse treatment culminating in his termination.

101. At least one act contributing to the hostile work environment occurred within 300 days before Plaintiff filed his charge of discrimination.

102. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Title VII;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT IV**
**RETALIATION**
**(Title VII, 42 U.S.C. § 2000e-3(a))**
**(Against Defendant Town of Lake Hamilton)**

103. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

104. Plaintiff engaged in statutorily protected activity by opposing and reporting to Votour the racial and sexual harassment described above. In the alternative, Plaintiff opposed the sexual harassment by refusing and objecting to his supervisors' sexual demands.

105. Defendant subjected Plaintiff to a series of materially adverse actions that, individually and collectively, would dissuade a reasonable employee from making or supporting a charge of discrimination, including: (a) micromanaging his work and subjecting it to heightened scrutiny not applied to other officers; (b) isolating and ostracizing him within the department; (c) repeatedly sending him alone to traffic stops and accident calls while other officers remained at the station, exposing him to greater risk and workload than his peers; (d) excluding him from promotions, better work details, and favorable assignments, which were instead given to officers within the supervisors' inner circle; (e) issuing him a letter of counseling on or about October 31, 2024, through Sergeant Clark, one of the harassers, and a letter of guidance on or about November 1, 2024, through then-

Lieutenant Ortiz-Gonzalez, another of the harassers, for minor matters that did not warrant discipline; (f) dispatching Sergeant Clark and another officer to confront Plaintiff at approximately 2:30 a.m. on June 18, 2025, at the hospital where his father lay dying, and to initiate his termination by taking his badge and police identification; and (g) terminating his employment later that same day, while he remained on workers' compensation leave, without notice of any charge or an opportunity to respond.

106. Defendant's decision-makers knew of Plaintiff's protected activity, and Plaintiff's protected activity was the but-for cause of the adverse actions.

107. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Title VII;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT V**
**RACE DISCRIMINATION AND HARASSMENT**
**(42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983)**
**(Against Defendant Town of Lake Hamilton)**

108. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

109. Section 1981 guarantees all persons the same right to make and enforce contracts, including employment relationships and their terms and conditions, as is enjoyed by white citizens. Against a state actor, that right is enforced through 42 U.S.C. § 1983.

110. Plaintiff is Black and of Haitian ancestry and ethnic characteristics, and is protected by § 1981.

111. Acting under color of state law, Defendant subjected Plaintiff to a racially hostile work environment and terminated his employment because of his race and ancestry.

112. The deprivation of Plaintiff's § 1981 rights was caused by Defendant's policy or custom, in that (i) the termination was made by Defendant's Town Administrator, Defendant's final policymaker for employment decisions, together with Votour, or alternatively by Votour in the exercise of final, unreviewed authority over police discipline and termination delegated to him by Defendant, and (ii) the

racial harassment was the product of a persistent and widespread custom of racial slurs and ridicule by command staff, which Defendant's policymakers knew of and tolerated with deliberate indifference.

113. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Plaintiff's rights;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(f) Grant such other relief as the Court deems just and proper.

## COUNT VI
## RETALIATION
## (42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983)
## (Against Defendant Town of Lake Hamilton)

114. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

115. Plaintiff engaged in activity protected by § 1981 by reporting and opposing the racial harassment described above, including harassment based on his Haitian ancestry and ethnic characteristics, to Votour.

116. Acting under color of state law, Defendant terminated Plaintiff's employment and took other adverse actions against him because of that protected activity.

117. The retaliation was caused by Defendant's policy, in that the termination was made by Defendant's Town Administrator, Defendant's final policymaker for employment decisions, together with Votour, or alternatively by Votour in the exercise of final, unreviewed authority over police discipline and termination delegated to him by Defendant, with knowledge of Plaintiff's protected activity.

118. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Plaintiff's rights;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT VII**
**RACE DISCRIMINATION — EQUAL PROTECTION**
**(42 U.S.C. § 1983; U.S. Const. amend. XIV)**
**(Against Defendant Town of Lake Hamilton)**

119. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

120. The Equal Protection Clause of the Fourteenth Amendment guarantees public employees the right to be free from intentional discrimination and harassment in employment because of race and national origin.

121. Acting under color of state law, Defendant intentionally subjected Plaintiff to racial harassment and terminated his employment because of his race and national origin.

122. The deprivation was caused by Defendant's policy or custom, in that (i) the termination was made by Defendant's Town Administrator, Defendant's final policymaker for employment decisions, together with Votour, or alternatively by Votour in the exercise of final, unreviewed authority over police discipline and termination delegated to him by Defendant, and (ii) the harassment was the product of a persistent and widespread custom of racial slurs and ridicule by command staff, which Defendant's policymakers knew of and tolerated with deliberate indifference.

123. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Plaintiff's rights;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT VIII**
**SEX DISCRIMINATION — EQUAL PROTECTION**
**(42 U.S.C. § 1983; U.S. Const. amend. XIV)**
**(Against Defendant Town of Lake Hamilton)**

124. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

125. The Equal Protection Clause of the Fourteenth Amendment guarantees public employees the right to be free from intentional sex discrimination, including sexual harassment, in employment.

126. Acting under color of state law, Plaintiff's supervisors intentionally subjected Plaintiff to sexual harassment because of his sex.

127. The deprivation was caused by Defendant's custom, in that the sexualized conduct of LHPD command staff was persistent and widespread and was known to and tolerated with deliberate indifference by Defendant's policymakers, including Votour, after Plaintiff reported it. Votour received Plaintiff's report of the sexual harassment, asked him to put it in writing, scheduled and twice cancelled meetings to address it, and took no corrective action.

128. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated Plaintiff's rights;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages for emotional distress, mental anguish, and other non-economic losses;

(e) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT IX**
**HOSTILE WORK ENVIRONMENT**
**RACE, COLOR, AND NATIONAL ORIGIN**
**(FCRA, Fla. Stat. § 760.10(1)(a))**
**(Against Defendant Town of Lake Hamilton)**

129. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

130. Plaintiff is Black and of Haitian national origin, and is a member of protected classes under the FCRA.

131. Plaintiff was subjected to unwelcome harassment because of his race, color, and national origin that was sufficiently severe or pervasive to alter the terms

and conditions of his employment and create a hostile and abusive working environment.

132. Defendant is liable because the harassment was committed by Plaintiff's supervisors and because Defendant knew or should have known of it and failed to take prompt and appropriate remedial action.

133. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated the FCRA;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries, under Fla. Stat. § 760.11(5);

(e) Award reasonable attorney's fees and costs under Fla. Stat. § 760.11(5); and

(f) Grant such other relief as the Court deems just and proper.

## COUNT X
## RACE, COLOR, AND NATIONAL-ORIGIN DISCRIMINATION — DISCHARGE
## (FCRA, Fla. Stat. § 760.10(1)(a))
## (Against Defendant Town of Lake Hamilton)

134. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

135. Plaintiff is Black and of Haitian national origin, and was qualified for his position.

136. Defendant terminated Plaintiff's employment on June 18, 2025, because of his race, color, and national origin. Defendant treated similarly situated employees outside Plaintiff's protected classes more favorably, and its stated reason is a pretext for discrimination.

137. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated the FCRA;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries, under Fla. Stat. § 760.11(5);

(e) Award reasonable attorney's fees and costs under Fla. Stat. § 760.11(5); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT XI**
**HOSTILE WORK ENVIRONMENT**
**SEX (INCLUDING QUID PRO QUO)**
**(FCRA, Fla. Stat. § 760.10(1)(a))**
**(Against Defendant Town of Lake Hamilton)**

138. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

139. Plaintiff was subjected to unwelcome sexual conduct by his supervisors because of his sex that was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a hostile and abusive working environment.

140. Defendant is liable because the harassment was committed by Plaintiff's supervisors and because Defendant knew or should have known of it and failed to take prompt and appropriate remedial action.

141. In the alternative, Plaintiff's supervisors conditioned job benefits on Plaintiff's submission to their sexual demands, and Plaintiff's refusal was followed by adverse treatment culminating in his termination.

142. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated the FCRA;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries, under Fla. Stat. § 760.11(5);

(e) Award reasonable attorney's fees and costs under Fla. Stat. § 760.11(5); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT XII**
**RETALIATION**
**(FCRA, Fla. Stat. § 760.10(7))**
**(Against Defendant Town of Lake Hamilton)**

143. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-81 as if fully set forth in this Count.

144. Plaintiff opposed practices made unlawful by the FCRA by reporting the racial and sexual harassment to Votour and, in the alternative, by refusing and objecting to his supervisors' sexual demands.

145. Because of that opposition, Defendant, acting through the same supervisors whose conduct Plaintiff had refused and reported, subjected Plaintiff to

a series of materially adverse actions that, individually and collectively, would dissuade a reasonable employee from opposing discrimination, including: (a) micromanaging his work and subjecting it to heightened scrutiny not applied to other officers; (b) isolating and ostracizing him within the department; (c) repeatedly sending him alone to traffic stops and accident calls while other officers remained at the station, exposing him to greater risk and workload than his peers; (d) excluding him from promotions, better work details, and favorable assignments, which were instead given to officers within the supervisors' inner circle; (e) issuing him a letter of counseling on or about October 31, 2024, through Sergeant Clark, one of the harassers, and a letter of guidance on or about November 1, 2024, through then-Lieutenant Ortiz-Gonzalez, another of the harassers, for minor matters that did not warrant discipline; (f) dispatching Sergeant Clark and another officer to confront Plaintiff at approximately 2:30 a.m. on June 18, 2025, at the hospital where his father lay dying, and to take his badge and police identification; and (g) terminating his employment later that same day, while he remained on workers' compensation leave, without notice of any charge or an opportunity to respond.

146. As a direct and proximate result, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Declare that Defendant's conduct violated the FCRA;

(b) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(c) Order reinstatement or, in lieu of reinstatement, award front pay;

(d) Award compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries, under Fla. Stat. § 760.11(5);

(e) Award reasonable attorney's fees and costs under Fla. Stat. § 760.11(5); and

(f) Grant such other relief as the Court deems just and proper.

**COUNT XIII**
**WORKERS' COMPENSATION RETALIATION**
**(Fla. Stat. § 440.205)**
**(Against Defendant Town of Lake Hamilton)**

147. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 and 81 as if fully set forth in this Count.

148. Section 440.205, Florida Statutes, provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."

149. Plaintiff suffered a compensable injury arising out of and in the course of his employment on or about December 2, 2024, and made a valid claim for compensation under the Workers' Compensation Law.

150. Defendant knew of Plaintiff's workers' compensation claim.

151. Defendant discharged Plaintiff on June 18, 2025, while he remained on workers' compensation leave and before he was released from medical care, by reason of his valid claim for compensation.

152. The reason Defendant gave for the discharge is a pretext for retaliation due to his workers' compensation claim.

153. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and the other damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant, Town of Lake Hamilton, and requests that the Court:

(a) Award Plaintiff back pay and lost benefits, with prejudgment interest;

(b) Award front pay;

(c) Award compensatory damages, including damages for emotional distress;

(d) Award taxable costs; and

(e) Grant such other relief as the Court deems just and proper.

**COUNT XIV**
**RACE AND ANCESTRY HARASSMENT**
**(42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983)**
**(Against Defendant Jose Ortiz-Gonzalez, Individually)**

154. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

155. Section 1981 guarantees all persons the same right to make and enforce contracts, including the terms and conditions of employment, as is enjoyed by white citizens, and prohibits harassment because of race, ancestry, and ethnic characteristics. A state actor who violates § 1981 is liable in his individual capacity under 42 U.S.C. § 1983.

156. Plaintiff is Black and of Haitian ancestry and ethnic characteristics, and is protected by § 1981.

157. Acting under color of state law and using his supervisory authority, Ortiz-Gonzalez personally and intentionally subjected Plaintiff to harassment because of his race and Haitian ancestry, including the racial slurs, mocking the Haitian accent and unwelcome jokes, including the "HAITIAN HAMMER" nickname, attempting to grab Plaintiff's genitals and ridicule of Plaintiff's Haitian ancestry.

158. The harassment was unwelcome and was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a

racially hostile and abusive working environment, which Plaintiff subjectively perceived, and a reasonable person would perceive, as hostile and abusive.

159. Ortiz-Gonzalez engaged in conduct that was intentional racial harassment of a subordinate public employee in violation of § 1981, and a reasonable officer in his position would have known that his conduct was unlawful.

160. Ortiz-Gonzalez acted intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

161. As a direct and proximate result of Ortiz-Gonzalez's conduct, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant Jose Ortiz-Gonzalez, individually, and requests that the Court:

(a) Declare that Ortiz-Gonzalez's conduct violated Plaintiff's rights under 42 U.S.C. § 1981;

(b) Award Plaintiff compensatory damages, including damages for emotional distress, mental anguish, humiliation, and other non-economic losses;

(c) Award Plaintiff punitive damages;

(d) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(e) Grant such other relief as the Court deems just and proper.

## COUNT XV
## RETALIATION
## (42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983)
## (Against Defendant Jose Ortiz-Gonzalez, Individually)

162. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

163. Plaintiff engaged in activity protected by § 1981 by opposing and objecting to the racial harassment described above, including by making plain his disapproval of the racial and ethnic remarks, as alleged in paragraphs 24 and 27, and by reporting the racial harassment to Votour, as alleged in paragraph 41.

164. Ortiz-Gonzalez knew of Plaintiff's protected activity, including Plaintiff's objections and opposition that were directed at remarks made by Ortiz-Gonzalez and in his presence. Furthermore, upon information and belief, Ortiz-Gonzalez learned of Plaintiff's report to Votour.

165. Acting under color of state law, and because of Plaintiff's protected activity, Ortiz-Gonzalez took materially adverse actions against Plaintiff, including (i) issuing Plaintiff a retaliatory letter of guidance on or about November 1, 2024, and (ii) directing Sergeant Clark and Officer Elber to confront Plaintiff at the Orlando hospital on June 18, 2025, and take his badge and police identification, to initiate his termination.

166. Plaintiff's protected activity was the but-for cause of these actions, which would dissuade a reasonable employee from making or supporting a charge of discrimination.

167. When Ortiz-Gonzalez took these actions, it was clearly established that retaliating against an employee for opposing race discrimination violates § 1981, and a reasonable officer in his position would have known that his conduct was unlawful.

168. Ortiz-Gonzalez acted intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

169. As a direct and proximate result of Ortiz-Gonzalez's conduct, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant Jose Ortiz-Gonzalez, individually, and requests that the Court:

(a) Declare that Ortiz-Gonzalez's conduct violated Plaintiff's rights under 42 U.S.C. § 1981;

(b) Award Plaintiff compensatory damages, including lost wages and benefits and damages for emotional distress, mental anguish, humiliation, and other non-economic losses;

(c) Award Plaintiff punitive damages;

(d) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(e) Grant such other relief as the Court deems just and proper.

**COUNT XVI**
**RETALIATION**
**(42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983)**
**(Against Defendant Christopher Votour, Individually)**

170. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-76 as if fully set forth in this Count.

171. Plaintiff engaged in activity protected by § 1981 by reporting and opposing the racial harassment described above, including harassment based on his Haitian ancestry and ethnic characteristics, to Votour, as alleged in paragraph 41.

172. Votour had actual knowledge of Plaintiff's protected activity. He personally received Plaintiff's report, asked Plaintiff to put it in writing, and scheduled and cancelled two meetings to address it and otherwise failed to investigate or take any corrective action.

173. Acting under color of state law, and because of Plaintiff's protected activity, Votour personally participated in and made, together with the Town Administrator, the decision to terminate Plaintiff, and signed the termination letter on or about June 18, 2025.

174. Votour terminated Plaintiff while Plaintiff was on workers' compensation leave, without notice of any charge or an opportunity to respond, and for a stated reason that is pretext.

175. Plaintiff's protected activity was the but-for cause of Votour's decision to terminate him.

176. When Votour terminated Plaintiff, it was clearly established that terminating an employee for reporting and opposing race discrimination violates § 1981, and a reasonable official in his position would have known that his conduct was unlawful.

177. Votour acted intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

178. As a direct and proximate result of Votour's conduct, Plaintiff has suffered the damages described in paragraph 76.

WHEREFORE, Plaintiff demands judgment against Defendant Christopher Votour, individually, and requests that the Court:

(a) Declare that Votour's conduct violated Plaintiff's rights under 42 U.S.C. § 1981;

(b) Award Plaintiff compensatory damages, including lost wages and benefits, lost earning capacity, and damages for emotional distress, mental anguish, humiliation, and other non-economic losses;

(c) Award Plaintiff punitive damages;

(d) Award reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b)–(c); and

(e) Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 20, 2026.

Respectfully submitted,

O'CONNELL LAW, PLLC

/s/ Kelly L. O'Connell
Kelly L. O'Connell, Esq.
Fla. Bar No. 119312
1100 Brickell Bay Drive, Suite 5200
Miami, Florida 33131
Telephone: (305) 209-9246
*ko@kellyoconnelllaw.com*
*office@kellyoconnelllaw.com*

-and-

WLT LAW FIRM, PLLC

/s/ Walwin L. Taylor
Walwin L. Taylor, Esq.
Fla. Bar No. 119416
261 N. University Drive, Suite 500
Plantation, Florida 33324
*walwin@wltlegal.com*
*Attorneys for Plaintiff*